BEER, Judge.
On December 16, 1975, George Tenhaaf, while driving his daughter’s automobile, was struck from the rear by a vehicle driven by Steve Lusignan, an employee of Wheels, Inc. Tenhaaf sued Wheels, Inc. and its insurer, Continental Insurance Company, alleging that he suffered a disc injury as a result of the accident. The trial court awarded Tenhaaf $15,155.68, and Continental has suspensively appealed, alleging errors with respect to issues of injury, causation and quantum. Alternatively, Continental seeks reduction in quantum. Ten-haaf has also appealed, seeking increased damages.
The transcript discloses that Tenhaaf was purposefully evasive throughout the trial. His typical response to important questions on direct and on cross-examination was “I don’t remember off hand.”
For example, Tenhaaf testified that he did not remember experiencing past eom-plaints of neck injury, numbness or pain in the neck area despite the fact that YA records showed that he was treated for cervical spondylosis (tenderness over the cervical spine) in 1974; nor did he remember other accidents in 1974 or earlier in 1975, despite the June 3, 1975, VA record that he had suffered a re-injury (whiplash likely) and was experiencing recurrent pain in the back and shoulders. He denied ever having been a five-month in-patient at the New York Medical Center and could not remember the two myelograms also listed on a 1971 YA hospital report. He claimed that he first experienced neck pain after December of 1975 (the month of the accident at issue). Finally, in direct contravention of clear evidence to the contrary, he denied ever having instituted any other lawsuits (with the exception of one involving a 1974 Mississippi accident).
Louisiana State Trooper Arthur Behlar testified that there were no complaints of personal injury at the scene of this minor accident involving light damage.[1]
Dr. Kenneth Vogel, who saw Tenhaaf more than three weeks later, diagnosed a herniated cervical disc, accident caused, based on Tenhaaf’s history and version of the December 1975 accident. He recommended home administered physical therapy. By April, 1976, Tenhaaf had returned to work selling auto parts but continued complaints resulted in a myelogram being performed on September 29, 1976 by Vogel. This was followed very quickly by a fusion at C-6, C-7 on October 4, 1976. Thereafter, Tenhaaf complained of intermittent left shoulder pain as well as numbness and soreness of the right leg, cervical pain and arm discomfort.
Vogel believed that a 1974 VA hospital diagnosis of cervical spondylosis was completely consistent with x-rays showing degenerative cervical disc disease yet concluded that the December 1975 accident was the genesis of Tenhaaf’s alleged disc problem because he was more susceptible to this injury from an otherwise insignificant trau *1332 ma. Vogel noted that cervical disc disease may be asymptomatic, yet, with slight trauma, the patient becomes symptomatic. He concluded that a causal relation existed between the accident and the injury when considered in light of Tenhaaf’s history and description of the accident.
Dr. Richard W. Levy examined Tenhaaf approximately six months post-accident (and before surgery). His examination revealed no sign of spinal cord or nerve root injury or disease in the cervical or lumbar regions. However, based on the history given by Tenhaaf, Dr. Levy also was obliged to presume that the neck complaints were related to the December 1975 accident. His December 9, 1977 post-surgery examination revealed mild limitation of neck motion and slight straightening of the cervical curve as a result of the fusion. Based on these results and the fact of surgery, Dr. Levy indicated a 10% partial permanent disability rating of the body as a whole.
Defendants sought to impeach Tenhaaf’s credibility in a number of ways including the introduction of prior lawsuits filed by him; introduction of his deposition in which he testified that he could not remember any previous accidents or back and neck problems; by the testimony of Marie S. McAfee, chief of the VA hospital’s medical information section, who stated that she had submitted Tenhaaf’s VA records to the F.B.I. for investigation of obvious unauthorized additions and alterations; and, most significantly, by repeated reference to the record itself.
In absence of written reasons, we conclude that the trial court apparently did ascribe some causative factor to the minor rear-end collision of December 16, 1975, while, at the same time, being of the view that a substantial part of Tenhaaf’s medical difficulties were not attributable to that event.
We can comprehend this in view of the fact that the record does support the following factual conclusions: 1) a minor accident took place on December 16, 1975, involving a vehicle driven by Tenhaaf; 2) Tenhaaf was seen a little over three weeks thereafter by Dr. Vogel; 3) a fusion was performed by Dr. Vogel on October 4, 1976.
However, this record is replete with instance after instance of Tenhaaf’s essential refusal to answer pertinent and compelling questions. This usually takes the form of, “I don’t remember that” or “I don’t remember off-hand” or, simply, “I don’t know.” Tenhaaf falls far below the minimum of any reasonable standard for veracity and responsiveness to pertinent questions, and we find no support in this record for a conclusion that Tenhaaf is a credible witness in his own behalf and deem it necessary, in these circumstances, to completely disregard his testimony, both as a witness and with respect to the “history” given to Drs. Vogel and Levy.
State Trooper Behlar’s testimony indicates quite categorically that there were no complaints of any injuries at the scene of the incident, yet Tenhaaf has indicated in the histories presented to Drs. Vogel and Levy that he struck his head on the rear-view mirror; his right shoulder on the dashboard; was dazed and disoriented; and suffered severe headaches and shoulder pains. His first contact with any physician was with Vogel — over three weeks later — who he had been seeing as an out-patient because of his complaints emanating from causes completely unrelated to the accident of December 16, 1975.
We conclude that Tenhaaf’s testimony is both unconfirmed and unworthy of belief and that he has failed to carry the burden of proof necessary to show any con-nexity between the very minor accident of December 15, 1975, and the complaints to Vogel of January 8, 1976, and, thus, no causative link between said accident and the ultimate surgery performed by Vogel in October of 1976.
We hasten to observe, in reaching this conclusion, that we are mindful of and responsive to the trial judge’s superior ability to make credibility determinations. However, in this particular case, those aspects of credibility determination, such as demeanor, nervousness, mode of speech, physical char *1333 acteristics, hesitation, etc., have no bearing on our ultimate determination. For, even giving Tenhaaf the benefit of the doubt with respect thereto, his evasiveness and essential untruthfulness is apparent from the content (or, in this case, ■ the lack of content) of the answers themselves. The number and implication of these evasive answers are more readily apparent as one reads the record, and we realize that the able trial judge did not have the same advantage as we in this regard.
Continental has not seriously challenged the award of $500 to Sandra Sandifer, and that portion of the judgment is affirmed.
The judgment in favor of George Ten-haaf in the amount of $15,155.68 with legal interest and costs is reversed and set aside and Tenhaaf’s suit against Wheels, Inc., et al., is dismissed at his costs, including the expert fees of Drs. Vogel and Levy. Costs of this appeal are taxed against Tenhaaf.

AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. Tenhaaf, under oath, describes the damage to include the entire motor being knocked loose and coming “up through the hood and the radiator.”